**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

```
                                      :
TERRENCE O. WEBB,                     :
                                      :        Civil No. 07-517 (RBK)
             Petitioner,              :
                                      :
        v.                            :
                                      :             OPINION
CHARLES SAMUELS, JR.,                 :
                                      :
             Respondent.              :
                                      :
```

**APPEARANCES:**

> TERRENCE O. WEBB, Petitioner <u>pro se</u>
> #07648-084
> F.C.I. Fort Dix
> P.O. Box 2000 (East)
> Fort Dix, New Jersey 08640

**KUGLER, District Judge**

This matter comes before the Court upon <u>pro se</u> petitioner,
Terrence O. Webb's ("Webb") motion for reconsideration[1] of this
Court's March 1, 2007 Opinion and Order denying Webb's petition
for a writ of habeas corpus under 28 U.S.C. § 2241.  Webb filed

---

[1]  Webb styled his motion as seeking a rehearing pursuant to
Rule 40(a)(1)(2) of the <u>Federal Rules of Criminal Procedure</u>.
Because Webb's initial application is a civil action under 28
U.S.C. §2241 for habeas relief, in particular seeking a
declaration of derivative citizenship, <u>Fed.R.Crim.P.</u> 40(a) is
inapplicable, and the Court will construe Webb's motion simply as
one for reconsideration.

his motion for reconsideration on or about March 8, 2007.[2]
(Docket Entry No. 4).

The Court will consider petitioner's motion without oral
argument pursuant to Fed.R.Civ.P. 78.  For the reasons stated
below, the motion is denied.

## I.   BACKGROUND

On or about January 31, 2007, Webb filed a petition for a
writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking
derivative citizenship under 8 U.S.C. § 1431(a)(1)(2) and (b).
Webb stated that he was adopted by his grandmother, Carmen May
Webb, who was a United States citizen at the time of the
adoption.  Webb had arrived in the United States as a permanent
resident alien when he was twelve years old, and was always under
the custody of his grandmother.

This Court dismissed Webb's habeas petition for lack of
jurisdiction because Webb had not exhausted his administrative
remedies in applying for derivative citizenship with the
appropriate government agency, Citizenship and Immigration

---

[2]  Webb's motion is dated March 8, 2007, but was not
received by the Court until March 15, 2007.  The Court finds that
Webb "filed" his motion on the date he handed it to prison
officials to be mailed to the Court for filing.  See Houston v.
Lack, 487 U.S. 266, 276 (1988); Burns v. Morton, 134  F.3d 109,
113 (3d Cir. 1998)(incorporating the "mailbox rule" for habeas
petitions submitted by inmates confined in an institution).
Since the Court does not know the actual date that Webb handed
his motion papers to prison officials for mailing, the Court will
use the date petitioner signed and dated his motion, March 8,
2007.

Services (CIS),[3] before bringing this action in federal court. The Court noted that Webb did not acquire automatic derivative citizenship through the naturalization of his grandmother under the Child Citizenship Act of 2000, Pub.L. No. 106-395, 114 Stat. 1631, ("CCA"), 8 U.S.C. § 1431(b),[4] as alleged by Webb, and that Webb must make an application for derivative citizenship, which he did not do.  The dismissal was without prejudice to petitioner renewing his claim after he had exhausted his administrative remedies.

Webb now seeks to have this Court reconsider its dismissal of the petition based on alleged errors of law and fact.  First, Webb claims that the Court misstated the date he arrived in the United States as 1987.  Webb states that he arrived as a lawful permanent resident alien in 1983.

_____

[3] Pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), the Immigration and Naturalization Services ("INS") was abolished.  On March 1, 2003, most of the functions of the INS were transferred to the Department of Homeland Security ("DHS").  See Authority of the Secretary of Homeland Security; Delegations of Authority; Immigration Laws, 68 Fed. Reg. 10922 (March 6, 2003).  Three departments within the DHS assumed the INS's responsibilities: (a) U.S. Citizenship and Immigration Services ("CIS") has taken on the INS's immigration benefit services; (b) U.S. Immigration and Customs Enforcement ("ICE") has assumed the INS's law enforcement functions; and (c) U.S. Customs and Border Protection ("CBP") has taken the border patrol.

[4] Section 1431(b) provides that such automatic derivative citizenship shall apply to a child adopted by a United States citizen parent if the child satisfies the requirements applicable to adopted children under 8 U.S.C. § 1101(b)(1).

Second, Webb argues that he could not provide documentary proof of his adoption by his grandmother because this information must be obtained through the CIS.  Third, Webb claims that he did file an application for derivative citizenship with the CIS on November 28, 2006, but did not receive any response so he filed a habeas petition with this Court.

Next, Webb notes that an Immigration Detainer has been lodged against him while he is in federal prison, and that, consequently, he is subject to removal proceedings upon his release.

Finally, Webb contends that this Court was wrong in noting that his derivative citizenship claim was not automatic because the CCA does not apply retroactively to confer derivative citizenship on those who are no longer minors as of the effective date of the CCA.[5]  Webb argues that this point was overruled by the United States Court of Appeals for the Third Circuit in <u>Bagot v. Ashcroft</u>, 398 F.3d 252 (3d Cir. 2005).

## II.  <u>ANALYSIS</u>

Motions for reconsideration are not expressly recognized in the Federal Rules of Civil Procedure.  <u>United States v. Compaction Sys. Corp.</u>, 88 F. Supp.2d 339, 345 (D.N.J. 1999). Generally, a motion for reconsideration is treated as a motion to

---

[5] The CCA became effective 120 days after it was signed into law on October 30, 2000.  Pub. L. No. 106-395, Title 1, § 104, 114 Stat. 1633 (2000).  Webb was not a minor at that time.

alter or amend judgment under Fed.R.Civ.P. 59(e), or as a motion for relief from judgment or order under Fed.R.Civ.P. 60(b).  Id. In the District of New Jersey, Local Civil Rule 7.1(g) governs motions for reconsideration.  Bowers v. Nat'l. Collegiate Athletics Ass'n., 130 F. Supp.2d 610, 612 (D.N.J. 2001).

Local Civil Rule 7.1(g) permits a party to seek reconsideration by the Court of matters "which [it] believes the Court has overlooked" when it ruled on the motion.  L. Civ. R. 7.1(g); see NL Industries, Inc. v. Commercial Union Insurance, 935 F. Supp. 513, 515 (D.N.J. 1996).  The standard for reargument is high and reconsideration is to be granted only sparingly.  See United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994).  The movant has the burden of demonstrating either: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)(citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter.  Compaction Sys. Corp., 88 F. Supp.2d at 345; see also L.Civ.R. 7.1(g).  "The word 'overlooked' is the operative term in the Rule."  Bowers, 130 F.

Supp.2d at 612 (citation omitted); <u>see also</u> <u>Compaction Sys.</u>
<u>Corp.</u>, 88 F. Supp.2d at 345.

Ordinarily, a motion for reconsideration may address only
those matters of fact or issues of law which were presented to,
but not considered by, the court in the course of making the
decision at issue.  <u>See</u> <u>SPIRG v. Monsanto Co.</u>, 727 F. Supp. 876,
878 (D.N.J.), <u>aff'd</u>, 891 F.2d 283 (3d Cir. 1989).  Thus,
reconsideration is not to be used as a means of expanding the
record to include matters not originally before the court.
<u>Bowers</u>, 130 F. Supp.2d at 613; <u>Resorts Int'l. v. Greate Bay Hotel</u>
<u>and Casino, Inc.</u>, 830 F. Supp. 826, 831 & n.3 (D.N.J. 1992);
<u>Egloff v. New Jersey Air National Guard</u>, 684 F. Supp. 1275, 1279
(D.N.J. 1988).  Absent unusual circumstances, a court should
reject new evidence which was not presented when the court made
the contested decision.  <u>See</u> <u>Resorts Int'l</u>, 830 F. Supp. at 831
n.3.  A party seeking to introduce new evidence on
reconsideration bears the burden of first demonstrating that
evidence was unavailable or unknown at the time of the original
hearing.  <u>See</u> <u>Levinson v. Regal Ware, Inc.</u>, Civ. No. 89-1298,
1989 WL 205724 at *3 (D.N.J. Dec. 1, 1989).

Moreover, L.Civ.R. 7.1(g) does not allow parties to restate
arguments which the court has already considered.  <u>See</u> <u>G-69 v.</u>
<u>Degnan</u>, 748 F. Supp. 274, 275 (D.N.J. 1990).  Thus, a difference
of opinion with the court's decision should be dealt with through

the normal appellate process.  <u>Bowers</u>, 130 F. Supp.2d at 612
(citations omitted); <u>Florham Park Chevron, Inc. v. Chevron</u>
<u>U.S.A., Inc.</u>, 680 F. Supp. 159, 162 (D.N.J. 1988); <u>see</u> <u>also</u>
<u>Chicosky v. Presbyterian Medical Ctr.</u>, 979 F. Supp. 316, 318
(D.N.J. 1997); <u>NL Industries, Inc. v. Commercial Union Ins. Co.</u>,
935 F. Supp. 513, 516 (D.N.J. 1996) ("Reconsideration motions ...
may not be used to re-litigate old matters, or to raise arguments
or present evidence that could have been raised prior to the
entry of judgment.").  In other words, "[a] motion for
reconsideration should not provide the parties with an
opportunity for a second bite at the apple." <u>Tishcio v. Bontex,</u>
<u>Inc.</u>, 16 F. Supp.2d 511, 533 (D.N.J. 1998)(citation omitted).

Here, Webb points out several factual errors, such as the
date he arrived in the United States, the fact that an
immigration detainer is actually lodged against him, that he has
in fact sent a letter to the CIS seeking derivative citizenship,
and that documents to prove his adoption are in the custody of
the CIS.  Nevertheless, this Court finds that these factual
errors, now brought to its attention, would not alter the outcome
of its March 1, 2007 ruling.

While Webb may have filed a letter with the CIS seeking
derivative citizenship, it is plain that the CIS has not rendered
a decision denying such claim.  It also would appear that his
claim of derivative citizenship may currently be under review by

the CIS because petitioner admits that the CIS has his file with documentary proof of his adoption by his grandmother.  Webb also admits that he is subject to removal proceedings by virtue of the immigration detainer lodged against him, suggesting that his claim of derivative citizenship must be determined by the CIS before review by the federal courts.

Moreover, Webb acknowledges that he filed his claim for derivative citizenship on November 28, 2006, and did not receive any response from the CIS before filing his petition on or about January 31, 2007, barely two months later.  Thus, Webb has not demonstrated by this new information that he has actually exhausted his administrative remedies with the CIS concerning his claim of citizenship before seeking judicial review in this Court.  See United States v. Breyer, 41 F.3d 884, 892 (3d Cir. 1994)("a federal district court does not have jurisdiction to declare citizenship absent exhaustion of an applicant's administrative remedies").

Finally, Webb argues that he is entitled to automatic derivative citizenship based on the naturalization of his grandmother who adopted him.  He contends that this Court wrongly stated that the CCA does not apply retroactively to confer derivative citizenship on those who are no longer minors.  Webb cites Bagot v. Ashcroft, 398 F.3d 252 (3d Cir. 2005), claiming that the United States Court of Appeals for the Third Circuit

8

overruled this when the court granted Bagot derived citizenship, who was 30 years old and not a minor at the time 8 U.S.C. § 1431 became effective.

Webb's reading of <u>Bagot</u> is incorrect.  The Third Circuit found that the former provision for derivative citizenship, 8 U.S.C. § 1432(a) applied, and that Bagot had met the necessary requirements to obtain derivative citizenship from his father under that statute.  Specifically, the court found that Bagot's father was naturalized in 1991 and had legal custody, or actual uncontested custody, of Bagot at that time.  Bagot was seventeen years old in 1991.  Moreover, the court noted that the applicable law for conveying citizenship to a child born outside the United States when one parent is a U.S. citizen is the statute in effect at the time of the child's birth.  <u>Bagot</u>, 398 F.3d at 257 fn 3. There was no declaration that the CCA may be retroactively applied to confer derivative citizenship on those who are no longer minors.

This Court further notes that the derivative citizenship statute that was in effect at the time of petitioner's birth required that foreign-born adoptive children must reside with their adoptive parent(s) at the time of the parent's(s') naturalization in order for children to achieve derivative

9

citizenship.  <u>See</u> 8 U.S.C. § 1432(b)(1988);[6] <u>Smart v. Ashcroft</u>, 401 F.3d 119 (2d Cir. 2005).  In his petition, Webb provides a copy of his grandmother's naturalization certificate showing a date of June 1981.  He admits that he was adopted by his grandmother in 1983 and arrived in the United States in 1983 when he was twelve years old.

Consequently, Webb has not established any factual or legal issue that would serve to alter this Court's disposition of the matter as set forth in the March 1, 2007 Opinion and Order.

### III. <u>CONCLUSION</u>

Therefore, for the reasons expressed above, Webb's motion for reconsideration will be denied.  An appropriate Order follows.


                              S/Robert B. Kugler
                              ROBERT B. KUGLER
                              United States District Judge
Dated: March 26, 2007

---

[6]  The relevant statute reads: "Subsection (a) of this section shall apply to an adopted child only if the child is residing in the United States at the time of naturalization of such adoptive parent, in the custody of his adoptive parents, pursuant to a lawful admission for permanent residence."
8 U.S.C. § 1432(b)(1988).